## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| ITASCA GOLF INVESTORS, LLC and | ) | |
| ITASCA GOLF REAL | ) | |
| ESTATE HOLDINGS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| NEW YORK MARINE AND GENERAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Itasca Golf Investors, LLC and Itasca Golf Real Estate Holdings, LLC (collectively "Itasca Country Club") and for their Complaint against New York Marine and General Insurance Company ("New York Marine"), state as follows:

### NATURE OF THE ACTION

1.      Plaintiffs operate the Itasca Country Club.  The Itasca Country Club has been in operation for over 90 years and has an 18-hole golf course with hundreds of mature trees.

2.      On July 21, 2017, a major wind and hailstorm swept through Itasca, Illinois.  The storm wreaked havoc on the Itasca Country Club property, destroying at least 72 trees and damaging many more.  The storm also caused extensive damage to certain buildings at the Itasca Country Club, in particular the roofs of the main Club House, Pool House, and at least one maintenance building.

3.      At the time of the storm, New York Marine insured the Itasca Country Club property.  The insurance policy included $8,649,436 in replacement cost coverage for damage to buildings and a "Country Club Endorsement" providing $2,000,000 in replacement cost coverage

for damage to trees. The Country Club Endorsement covers the cost of replacing damaged trees with "substantially identical" property.

4. Itasca Country Club gave notice of the loss to New York Marine on July 26, 2017, and New York Marine assigned an adjuster to handle the claim. New York Marine has slow-walked the claim adjustment process, and over $2,500,000 remains unpaid to this day.

5. On February 8, 2018, Itasca Country Club forwarded New York Marine quotes for the cost to replace 26 of the lost trees. New York Marine's lead adjuster acknowledged that the quoted replacement cost of $1.85 million for just 26 of 72 lost trees demonstrated that Itasca Country Club's tree damage claim would total more than $5,100,000. Because this projected figure was far in excess of the $2,000,000 tree damage limit, New York Marine's lead adjuster advised that Itasca Country Club did not need to obtain quotes to replace the remaining trees. New York Marine decided to hire its own arborist, who did not conduct an initial inspection until June 2018. When New York Marine finally sent a tree replacement report in October 2018, the assessment did not provide any indication of how much New York Marine was willing to pay, and proposed replacement trees that were smaller, cheaper, and of different species than those lost to the storm.

6. On or about January 5, 2018, Itasca Country Club submitted a repair quote for its building damage to New York Marine. New York Marine insisted on multiple additional rounds of inspections, eventually submitting its own estimate of the repair costs—$142,807—on or about August 1, 2018. New York Marine's most recent repair estimate is $191,608, which is far short of Itasca Country Club's current estimate of $685,992.

7. Approximately sixteen months have passed since the storm. New York Marine made interim payments covering Itasca Country Club's initial clean-up and response work, as well

2

as minor damage to Itasca Country Club's fencing and driving range. But despite dozens of phone calls and scores of emails from Itasca Country Club, New York Marine has not paid a single cent on Itasca Country Club's tree claims, and only a tiny portion of its building claims. New York Marine has given no indication of when (or how much) it intends to pay in total. This sixteen month delay is vexatious and unreasonable, violates New York Marine's duty of good faith, and entitles Itasca Country Club to costs, attorney's fees, and statutory damages under 215 ILCS 5/155.

## PARTIES

8. Itasca Golf Investors, LLC ("IGI") is an Illinois limited liability company with its principal place of business in Itasca, Illinois. IGI operates the Itasca Country Club at 400 East Orchard Street, Itasca, Illinois. IGI's membership interests are held, directly and/or indirectly, by citizens of Illinois and the Cayman Islands.

9. Itasca Golf Real Estate Holdings, LLC ("Itasca Golf") is an Illinois limited liability Company with its principal place of business in Itasca, Illinois. Itasca Golf owns the property commonly known as the Itasca Country Club.

10. Defendant New York Marine is a New York insurance company with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

12. This Court has personal jurisdiction over New York Marine pursuant to 735 ILCS 5/2-209 because this action arises out of New York Marine's issuance of an insurance policy to an Illinois limited liability company with its principal place of business in Itasca, Illinois.

13.     Venue is proper in the Northern District of Illinois pursuant to U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## GENERAL ALLEGATIONS

A.     The Itasca Country Club Policy

14.     Itasca Country Club holds an insurance policy with New York Marine with the policy number PK201600008151 and a policy period running from July 25, 2016 through July 25, 2017 (the "Policy").  The Policy includes, among other items, a Building and Personal Property Coverage Form (the "Property Coverage Form"), a Causes of Loss – Special Form (the "Causes of Loss Form"), a Country Club Coverage Endorsement (the "Country Club Endorsement"), and a Deluxe Commercial Property Coverage Extension.  A copy of the Policy is annexed hereto as Exhibit A-1 and Exhibit A-2.  IGI is the named insured and Itasca Golf is an additional insured under the Policy.

15.     As reflected in its Declarations and elsewhere, the Commercial Property Coverage Part of the Policy provides Replacement Cost coverage.

I.     Building Damage Coverage

16.     Property Coverage Form Section A provides that:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

17.     Property Coverage Form Section A.1. provides that:

> Covered Property, as used in this Coverage Part, means the type of property described in this Section, A.1., and limited in A.2 Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

4

       a.    Building, meaning the building or structure described in the Declarations . . .

18.    Itasca Country Club's Club House, Pool House, and maintenance buildings are described in the Declarations and shown in the Policy's $8,649,436 Blanket Building Limit of Insurance. These are the buildings that sustained damage as a result of the storm.

19.    Causes of Loss Form Section A provides, in relevant part, that:

"Covered Causes of Loss" means direct physical loss unless the loss is excluded or limited in this policy.

The storm which occurred on July 21, 2017 is a covered cause of loss.

20.    Property Coverage Form Section G.3. provides that, for Replacement Cost policies:

       a.    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

       …

       e.    We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2), or (3) . . .

           (1)    The Limit of Insurance applicable to the lost or damaged property;

           (2)    The cost to replace the lost or damaged property with other property:

               (a)    Of comparable material and quality; and

               (b)    Used for the same purpose; or

           (3)    The amount actually spent that is necessary to repair or replace the lost or damaged property.

II.    <u>Tree Damage Coverage</u>

21.    The Policy provides coverage for damage to trees pursuant to the Country Club Endorsement.

22.     Country Club Endorsement Section 1.a.(1)(a) defines "Golf or Tennis Property" as "outdoor portions of the premises . . . specifically designed and maintained for the games of tennis or golf, including . . . (ii) Golf greens, tees, fairways, rough, sand traps, practice putting greens and practice driving ranges; (iii) Trees, shrubs and plants . . ."

23.     The Schedule to the Country Club Endorsement sets forth a $2,000,000 Limit of Insurance for "Golf or Tennis Property".

24.     Country Club Endorsement Section 3.a. provides that:

With respect to Golf or Tennis Property described in 1.a.(1) above, Covered Causes of Loss means the following:

…

(4)     Windstorm or hail, but not including:

(a)     Frost or cold weather; or

(b)     Ice (other than hail), snow or sleet, whether driven by wind or not.

25.     Country Club Endorsement Section 9.a. provides that:

With respect to Golf or Tennis Property, the value of the property will be the least of the following amounts:

(1)     The cost of reasonably restoring that property to its condition immediately before loss or damage; or

(2)     The cost of replacing that property with substantially identical property.

B.      The July 21, 2017 Storm and Itasca Country Club's Claim

26.     On July 21, 2017, a major storm hit Itasca Country Club, with nearby weather stations recording 1.25 inch diameter hail and winds in excess of 70 miles per hour.

6

27.     The storm caused major damage to Itasca Country Club's property, destroying at least 72 trees and damaging scores more.  It also caused extensive damage to Itasca Country Club's buildings, including the main Club House, the Pool House, and a maintenance building.

28.     On or about July 26, 2017, Itasca Country Club's insurance broker, HUB International Midwest Ltd. ("HUB"), tendered notice of the storm loss to New York Marine.

29.     Also on or about July 26, 2017, New York Marine acknowledged receipt of Itasca Country Club's claim and assigned a claim number of LAX00118135.   New York Marine subsequently appointed Engle Martin & Associates to adjust the claim.  At all relevant times, the lead adjuster on the claim has been Erik Jaske.

30.     New York Marine made interim payments to cover removal of toppled trees, repair of fencing and driving range damage, wind damage, and other initial response and cleanup work. New York Marine has made no payment for damage to Itasca Country Club's trees, and only minimal payment for Itasca Country Club's buildings.

C.      New York Marine Protracts and Delays Payment of Itasca Country Club's Tree Claim

31.     Having given notice of the claim, and with New York Marine's consent, Itasca Country Club hired the SavATree Consulting Group ("SavATree") to catalog the tree damage caused by the storm.  SavATree's expert visited Itasca Country Club on or about October 21, 2017. On or about December 22, 2017, SavATree issued a report detailing the species and location of 42 damaged and 72 destroyed trees (the "SavATree Report").

32.     Separately, and also with New York Marine's consent, Itasca Country Club began soliciting quotations for substantially identical replacement trees.  Between December 1, 2017 and January 18, 2018, Itasca Country Club obtained replacement quotes for 26 of its lost trees from

Sterling Arbor, a company with expertise in locating and replanting fully grown trees. Sterling Arbor quoted a total cost of $1,848,000 to replace the 26 trees in question.

33.     On February 8, 2018, Itasca Country Club provided a copy of the SavATree Report and the Sterling Arbor quotes to New York Marine.

34.     Also on February 8, 2018, Itasca Country Club's general manager spoke with Erik Jaske. After discussing Itasca Country Club's claim for damage to its trees, Jaske specifically advised that there was no need for Itasca Country Club to obtain any further replacement cost quotes from Sterling Arbor because the quotes obtained to date showed that the total claim would be well in excess of the $2 million policy limit for tree damages.

35.     Despite acknowledging on February 8, 2018 that the information available to date showed that Itasca Country Club had suffered tree damage far in excess of the relevant policy limits, New York Marine did not promptly pay the Tree Claim. Instead, after a delay of several months, New York Marine retained its own arborist, Frank Spina.

36.     Spina first visited Itasca Country Club on or about June 12, 2018, approximately 11 months after the storm. He returned to conduct a fuller inspection and develop a tree replacement proposal in or about September 12 through September 15, 2018.

37.     New York Marine forwarded the resulting tree replacement proposal on or about October 9, 2018 (the "New York Marine Replacement Plan"). The New York Marine Replacement Plan did not attempt to replace the damaged and missing trees with "substantially identical" trees. As a result, it is difficult to compare the proposed replacement trees to the lost trees. Nevertheless, in those cases where direct comparison is possible, it is readily apparent that the New York Marine Replacement Plan proposes to replace the lost trees with smaller trees and, in some cases, entirely different species. For example:

8

a. **Hole 2**. Itasca Country Club lost three hardwood Maple trees at Hole 2, each with a 16 inch trunk diameter. Sterling Arbor estimates that replacing these maple trees will cost $49,500 per tree, for a total of $148,500 total. New York Marine proposes to replace these trees with three Norway Spruces and 2 Douglas Firs, all of unspecified diameter.

b. **Hole 5**. Itasca Country Club lost two hardwood Maple trees at Hole 5, each with a 16 inch trunk diameter. Sterling Arbor estimates that replacement trees will cost $49,500 per tree, for a total of $99,000 total. New York Marine proposes to replace these trees with two White Oak trees with 6 inch trunk diameters.

c. **Hole 16**. Itasca Country Club lost four Osage Orange trees at Hole 16: two with 12 inch trunk diameters and two with 15 inch trunk diameters. Sterling Arbor estimates that replacing the 12 inch trees will cost $42,000 per tree and replacing the 15 inch trees will cost $52,500 per tree, for a total of $189,000. New York Marine proposes to replace these trees with two Autumn Blaze Maples with 4 inch trunk diameters and two Norway Spruce with unspecified trunk diameters.

38. Of the 26 trees for which Itasca Country Club obtained replacement value quotes, none had a trunk diameter of less than 12 inches. None of the replacement trees proposed by New York Marine had a trunk diameter of greater than 8 inches.

39. Of the 6 spruce trees for which Itasca Country Club obtained replacement value quotes, none had a height of less than 35 feet. None of the 57 replacement spruce, fir and pine trees proposed by New York Marine had a height of greater than 20 feet.

9

40.     The New York Marine Replacement Plan did not include a cost estimate.  However, Itasca Country Club understands from its own arborist that the New York Marine Replacement Plan would cost no more than $1.5 million: at least $500,000 short of policy limits and a mere fraction of the projected cost to replace the trees with "substantially identical" trees.

41.     Indeed, New York Marine's arborist, Spina, explained to Itasca Country Club's general manager that New York Marine was deliberately proposing to replace the lost trees with smaller trees because they were less expensive and more likely to survive the replanting process. Nevertheless, the New York Marine Replacement Plan proposed only a one year warranty on the replacement trees, rather than the two year warranty offered by Sterling Arbor.

42.     In short, having delayed for more than sixteen months since the date of the loss, New York Marine has proposed a replacement plan that does not comport with the Policy's requirement that replacement trees should be "substantially identical" to those that were lost in the storm.  New York Marine's proposal is a transparent effort to save money on a claim that it has previously acknowledged is in excess of policy limits.

D.      New York Marine Protracts and Delays Payment of Itasca Country Club's Buildings Claim

43.     In addition to tree damage, the storm also caused extensive damage to the Itasca Country Club's Club House, Pool House, and at least one maintenance building.

44.     On or about October 20, 2017, with New York Marine's consent, Itasca Country Club hired Driscoll Renovations Inc. ("Driscoll Renovations") to inspect the damage to its buildings and prepare a repair estimate.  Driscoll Renovations inspected the buildings on or about November 25, 2017, and submitted a repair estimate on or about January 5, 2018 (the "First Driscoll Estimate").

45.     On or about January 8, 2018, New York Marine rejected the First Driscoll Estimate, advising that it would schedule an engineering inspection. New York Marine later retained EFI Global to conduct the inspection.

46.     EFI Global inspected Itasca Country Club's buildings on or about March 26, 2018. EFI Global submitted a report to New York Marine dated March 28, 2018 (the "EFI Global Report"). The EFI Global Report concluded that storm had caused damage to the Club House, Pool House, and one maintenance building at Itasca Country Club. Indeed, EFI Global's inspection revealed additional damage over and above that found during Driscoll Renovation's earlier inspection.

47.     In light of the newly discovered damage, Driscoll Renovations prepared a new repair estimate dated May 16, 2018 (the "Second Driscoll Estimate"). The Second Driscoll Estimate provided a Replacement Cost Value ("RCV") estimate of $685,992 for repairs to the Itasca Country Club buildings which included a narrative regarding the needed work involved in making the repairs and why some roofs need to be replaced as opposed to repaired.

48.     On or about May 24, 2018, New York Marine rejected the Second Driscoll Estimate and advised that it intended to retain a building consultant to prepare an "independent estimate" based upon the EFI Global Report.

49.     In response to this rejection, Itasca Country Club asked to set up a meeting between Driscoll Renovations and New York Marine's representatives to discuss the details of the Second Driscoll Estimate and answer any questions that New York Marine might have. New York Marine rejected this request on or about May 31, 2018. New York Marine subsequently advised that it had retained Newman Construction Consulting ("Newman") to prepare a repair estimate.

11

50.     On or about August 1, 2018, New York Marine forwarded a repair estimate from Newman (the "First Newman Estimate"). The First Newman Estimate provided an RCV estimate of $142,807 and an Actual Cost Value ("ACV") estimate of $101,570 for repairs to Itasca Country Club's buildings.

51.     On or about August 22, 2018, on behalf of Itasca Country Club, HUB sent New York Marine materials detailing numerous failings in the Newman Report, including failures to observe particular technical standards and building code requirements, incorrect sizing on proposed replacements and repairs, and failure to cover repairs to certain hail damage areas.

52.     Almost three months later, on November 15, 2018, New York Marine sent a new repair estimate from Newman (the "Second Newman Estimate"). The Second Newman Estimate provides an RCV estimate of $191,608 and an ACV estimate of $145,262 for repairs to Itasca Country Club's buildings but does not provide any narrative addressing the significant difference between it and the estimate provided by the Itasca Country Club.

53.     Despite acknowledging that Itasca Country Club is entitled to building repairs in excess of $191,608, New York Marine has not paid, or promised to pay, this undisputed amount. Even if New York Marine were to pay the $191,608 in full, this amount falls far short of the $685,992 necessary to fully repair Itasca Country Club's buildings as required by the Policy.

## COUNT I
### Breach of Contract (Tree Claim)

54.     Plaintiffs repeat and reallege, as if set forth herein, the allegations of all the preceding paragraphs of this Complaint.

55.     The Policy is a valid and enforceable contract between Plaintiffs and New York Marine.

12

56.     Plaintiffs have substantially performed all of their obligations under the Policy and are willing to perform any remaining obligations under the Policy.

57.     New York Marine is able to perform all of its obligations under the Policy.

58.     New York Marine has materially breached the Policy by failing to pay to Plaintiffs the $2,000,000 owed for the tree claim.

WHEREFORE, Plaintiffs pray for a judgment in their favor in an amount to be found against the Defendant and for further relief that is just and equitable under the circumstances.

## COUNT II
### Breach of Contract (Building Claim)

59.     Plaintiffs repeat and reallege, as if set forth herein, the allegations of all the preceding paragraphs of this Complaint.

60.     The Policy is a valid and enforceable contract between Plaintiffs and New York Marine.

61.     Plaintiffs have substantially performed all of their obligations under the Policy and are willing to perform any remaining obligations under the Policy.

62.     New York Marine is able to perform all of its obligations under the Policy.

63.     New York Marine has materially breached the Policy by failing to authorize and/or pay Plaintiffs the approximately $700,000 needed to repair or replace roofs damaged in the storm.

WHEREFORE, Plaintiffs pray for a judgment in their favor in an amount to be found against the Defendant and for further relief that is just and equitable under the circumstances.

## COUNT III
### Violation of Illinois Insurance Code § 155

64.     Plaintiffs repeat and reallege, as if set forth herein, the allegations of all the preceding paragraphs of this Complaint.

65.     As Plaintiffs' insurer, New York Marine owes Plaintiffs a duty to investigate and pay claims in a prompt and timely manner.

66.     Illinois Insurance Code § 155, as codified at 215 ILCS 5/155, imposes liability on insurers who cause an "unreasonable delay in settling a claim" where the insurer's actions "or delay is vexatious and unreasonable . . ."

67.     The storm that caused the loss took place on July 21, 2017.  Over the ensuing sixteen months, despite dozens of phone calls and scores of emails from Itasca Country Club, New York Marine has repeatedly delayed investigation and settlement of Plaintiffs' claims.

68.     On February 8, 2018, New York Marine acknowledged that Plaintiffs claim for tree damage is indisputably in excess of $2 million.  Nevertheless, in the ensuing year, New York Marine has not paid, or promised to pay, any portion of that claim.

69.     On August 1, 2018, New York Marine acknowledged that Itasca Country Club's building damage claim is in excess of $142,807.  Nevertheless, in the ensuing six months, New York Marine has not paid, or promised to pay, this undisputed amount.

70.     Aside from the aforementioned payments, New York Marine has vexatiously and unreasonably delayed settlement of Plaintiffs' claims in violation of 215 ILCS 5/155 and its duties to Plaintiffs.

WHEREFORE, Plaintiffs pray for the following relief:

1.     Statutory damages of $60,000 pursuant to 215 ILCS 5/155;

2.     Prejudgment interest pursuant to 815 ILCS 205/2;

3.     Plaintiffs' reasonable attorney's fees and costs pursuant to 215 ILCS 5/155; and

4.     Such other and further relief that is just and equitable.

14

## JURY DEMAND

Plaintiffs Itasca Golf Investors, LLC and Itasca Golf Real Estate Holdings, LLC hereby

demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil

Procedure.

Respectfully submitted,
**ITASCA GOLF INVESTORS, LLC and**
**ITASCA GOLF REAL ESTATE HOLDINGS, LLC**,


By:        s/Anthony G. Barone
            One of Their Attorneys


Anthony G. Barone (6196315)
Angelo D. DiBartolomeo (6312660)
Barone Law Group, P.C.
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
Fax:    630-472-0864
abarone@baronelawgroup.com
adibartolomeo@baronelawgroup.com

15

## <u>LOCAL RULE 3.2 STATEMENT</u>

Pursuant to Northern District of Illinois Local Rule 3.2, Itasca Golf Investors, LLC and

Itasca Golf Real Estate Holdings, LLC hereby declare that they have no publicly held affiliates.


Respectfully submitted,
**ITASCA GOLF INVESTORS, LLC and
ITASCA GOLF REAL ESTATE HOLDINGS, LLC**,


By:        s/Anthony G. Barone
           One of Their Attorneys


Anthony G. Barone (6196315)
Angelo D. DiBartolomeo (6312660)
Barone Law Group, P.C.
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
Fax:    630-472-0864
abarone@baronelawgroup.com
adibartolomeo@baronelawgroup.com

16